DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Walter Hoehn, Jr., appeals the decision of the Medina County Court of Common Pleas, which found him guilty of felonious assault and bribery against the appellee, Judith Hoehn. This Court affirms.
 I. {¶ 2} Judith returned to her home in Chatham Township in Medina County around 8:00 a.m. on June 8, 2002. Judith had worked the night shift at the Alzheimer's unit where she is employed as a nurse. Shortly after returning home, Judith and her husband Walter, the appellant, got into a verbal altercation that escalated to physical violence. Appellant threw a knife at his wife, but missed her and hit a glass door. Judith tried to call the police, but appellant knocked the phone from her hand and hit her a couple of times in the hand with the phone. Appellant then grabbed Judith's hair and bent her backward over the kitchen sink. Appellant proceeded to hold a kitchen knife to Judith's throat and threatened to kill her just like his cousin killed his wife. At this point, Judith's pit bull, Petey, attacked appellant in an effort to protect Judith. While trying to get the dog off of him, appellant grabbed a vacuum cleaner wand. Judith tried to protect Petey and appellant struck her in the hand with the vacuum cleaner wand. Appellant made his way into the bathroom stating that when he returned he would kill Judith and Petey with a firearm he kept in the bathroom. While appellant was in the bathroom, Judith put Petey in the car and drove to her daughter Myriah Survance's home.
 {¶ 3} Myriah and her husband drove Judith to the Medina County Sheriff's Office to file a report. At the sheriff's office, Judith's injuries were documented and photographed. Also, Judith dictated a statement to her daughter detailing the incident between her and appellant earlier that morning. Myriah had to write the statement for her mother because Judith's hand had been injured in the altercation with appellant.
 {¶ 4} Later, during a voluntary discussion with the police and after being confronted with evidence of Judith's injuries, appellant admitted he grabbed Judith's hair and forced her over the sink. Appellant also admitted throwing a knife, but claimed he threw it at Petey, not Judith. In addition, appellant admitted hitting Judith with the vacuum cleaner wand, but claimed that it was an accident. Later that day, with Judith's consent, Myriah accompanied the police to her parents' home and helped them recover the firearm that Judith claimed appellant went to retrieve during their argument.
 {¶ 5} On June 16, 2002, appellant's daughter, Wendy Smith, visited him in jail. Appellant asked Wendy to tell her mother that if Judith would drop the criminal charges against him, he would give her whatever she wanted with regard to their divorce settlement. Judith testified at the preliminary hearing on June 17, 2002. Judith's testimony on June 17, 2002, was consistent with the statements she had given earlier to the police and other witnesses. However, at a later date, Judith began joint counseling sessions with appellant and became unwilling to testify against appellant.
 {¶ 6} Appellant was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1); one count of felonious assault, in violation of R.C. 2903.11(A)(2); and one count of bribery, in violation of R.C. 2921.02(C). Appellant pled not guilty, and the matter proceeded to a jury trial. The jury found appellant guilty on all three counts. Appellant was sentenced to a total of two years imprisonment.
 {¶ 7} Appellant timely appealed, setting forth eight assignments of error for review. Some of the assignments of error have been rearranged and/or combined to facilitate review.
 II. FIRST ASSIGNMENT OF ERROR
"The trial court erred when it admitted materially prejudicial hearsay evidence to be introduced under the Ohio rules of evidence hearsay exceptions 803(1), (2) and (4) during appellant's trial."
 FOURTH ASSIGNMENT OF ERROR
"The trial court materially erred when it allowed the state to cross-exam appellant's daughter using inadmiss[i]ble hearsay evidence."
 {¶ 8} In his first assignment of error, appellant contends that the trial court erred by allowing the introduction of hearsay evidence under the excited utterance exception listed in Evid.R. 803(2). Appellant also contends that the testimony is not admissible under the exceptions listed in Evid.R. 803(1) and (4). Appellant's argument is without merit.
 {¶ 9} In this assignment of error, appellant challenges the admission of the testimony of Officers Skochen and Kohler and paramedic Robertson regarding statements the victim made to them on June 8, 2002. The trial court found that the testimony regarding the statements made by the victim to these individuals was admissible under the excited utterance exception listed in Evid.R. 803(2).
 {¶ 10} Generally, out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay. Evid.R. 801(C) and 802. However, Evid.R. 803 provides numerous exceptions to the hearsay rule and states, in pertinent part:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (2)Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).
 {¶ 11} A statement that meets the definition of excited utterance found in Evid.R. 803(2) is admissible despite its hearsay nature if the following four conditions are satisfied:
"(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
"(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such dominationcontinued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
"(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
"(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.) State v. Wallace (1988), 37 Ohio St.3d 87, 89, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
 {¶ 12} The determination of whether a hearsay declaration should be admitted as an excited utterance is a matter within the trial court's sound discretion. Roach v. Roach (1992),79 Ohio App.3d 194, 205. Therefore, this Court reviews a trial court's decision regarding the admissibility of evidence under Evid.R. 803(2) for an abuse of discretion. State v. Elkins (Sept. 27, 2000), 9th Dist. No. 19684; see, also, Potter,162 Ohio St. at 500. An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 13} At issue in the present case is the second requirement set forth in Wallace that the statement be made while the declarant is still under the stress of the startling occurrence.
 {¶ 14} In discussing the excited utterance exception, the Supreme Court of Ohio stated:
"There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.
"Therefore the passage of time between the statement and the event is relevant but not dispositive of the question. `[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation.'" (Citations omitted.) State v. Taylor (1993),66 Ohio St.3d 295, 303.
 {¶ 15} Further, "the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." Wallace,37 Ohio St.3d at 93.
 {¶ 16} Appellant concedes that the incident that occurred on June 8, 2002, was a startling event. However, he argues that the statements that Judith made to Officers Skochen and Kohler and paramedic Robertson were a result of reflective thought and were not spontaneous reactions to the incident in question.
 {¶ 17} The record reflects that the incident between Judith and appellant occurred between 8:00 and 8:15 on the morning of June 8, 2002. After fleeing her home, Judith went to her daughter Myriah's home. Myriah testified that her mother arrived at her home at approximately 9:00 a.m. on June 8, 2002. Myriah testified that her mother was very hysterical, that she was crying and shaking, when she arrived. Myriah further testified that she took her mother to the Medina County Sheriff's Office approximately one hour later.
 {¶ 18} Officer Skochen was working the receptionist desk at the Medina County Sheriff's Office when Judith arrived with her daughter and son-in-law. Officer Skochen testified that Judith arrived at the sheriff's office at approximately 11:00 a.m. on June 8, 2002. When questioned regarding Judith's demeanor when she arrived, Officer Skochen testified: "Scared to death, frantic, shaking. I have never seen anybody that upset and walk in the front door." Officer Skochen further testified that Judith spoke with herself, Officer Kohler, and paramedic Robertson within an hour of arriving at the sheriff's office.
 {¶ 19} Paramedic Robertson testified that he began examining Judith at the sheriff's office at approximately 11:51 a.m. on June 8, 2002. Paramedic Roberston testified that in his report he noted: "Patient was very upset and crying. Patient feared for her safety. Patient repeatedly stated when her husband finds her, he will kill her." Paramedic Roberston further testified that Judith repeatedly told him that when her husband finds her, he would kill her.
 {¶ 20} Officer Dan Kohler testified that he took Judith's statement at the sheriff's office. When asked how Judith looked when he first saw her, Officer Kohler replied: "Very upset, I mean, crying, shaking, hysterical." Officer Kohler further testified that Judith was crying the entire time he spoke with her.
 {¶ 21} A review of the testimony reveals that the statements Judith made to Officers Skochen and Kohler and paramedic Robertson were properly admitted under the excited utterance exception found in Evid.R. 803(2).[1] Judith made the statements within four hours of the incident between her and appellant occurring. Myriah, Officer Skochen, paramedic Robertson, and Officer Kohler all testified that Judith was physically upset at the time she spoke with each of them. Furthermore, there is no evidence in the record, nor does appellant assert that the questions Officer Skochen, paramedic Robertson or Officer Kohler asked Judith were coercive or leading.
 {¶ 22} In his fourth assignment of error, appellant contends that the trial court erred by allowing the State to cross-exam appellant's daughter, Myriah Survance, using inadmissible hearsay evidence. This Court disagrees.
 {¶ 23} Myriah testified that she prepared two written statements for the police on June 8, 2002. One statement that Myriah penned was her own statement, and one was written on behalf of her mother who could not write because her hand was badly injured. Appellant argues that the trial court erred by letting the State question Myriah about the statement she wrote on behalf of her mother. This Court disagrees.
 {¶ 24} At the time Myriah wrote Judith's statement, the two were at the sheriff's office. As stated previously, this was approximately three hours after the incident between Judith and appellant occurred. There is nothing in the record to suggest that the statements Judith made to Myriah and Myriah then wrote in Judith's written statement were not admissible under Evid.R. 803(2). Furthermore, these same statements were already admitted through the testimony of Officers Skochen and Kohler and paramedic Robertson. Additionally, Myriah, as well as the officers who spoke with Judith and the paramedic who examined her, stated that her mother was physically upset.
 {¶ 25} This Court finds that the trial court did not err in admitting the testimony of Officers Skochen and Kohler and paramedic Robertson. Furthermore, this Court finds that the trial court did not err in allowing the State to cross-examine Myriah concerning statements Judith made to her when she was preparing her mother's written statement for the police. Consequently, appellant's first and fourth assignments of error are overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court erred when it admitted, during appellant's trial, materially prejudicial hearsay statements allegedly made by Mrs. Hoehn to an orthopedic surgeon."
 {¶ 26} In his second assignment of error, appellant argues that the trial court erred in admitting statements made by Judith to Dr. Thomas Ebner, an orthopedic surgeon.
 {¶ 27} A review of the record shows that appellant did not object to Dr. Ebner's testimony which he now argues should have been excluded by the trial court. This Court has repeatedly held that the failure to object to the admission or exclusion of evidence waives any claim of error on appeal. See, e.g., Statev. Pasters (May 15, 1991), 9th Dist. No. 90 CA004898; State v.Skorvanek (June 27, 1990), 9th Dist. No. 2545; Akron v.Simpson (July 6, 1988), 9th Dist. No. 13383.
 THIRD ASSIGNMENT OF ERROR
"The trial court erred when it permitted the state to call Mrs. Hoehn to the stand and then cross-exam her regarding the alleged statements made by her to Paramedic Robertson, officers Skochen and Kohler and DR. Ebner."
 {¶ 28} Appellant avers in his third assignment of error that the trial court erred when it permitted the State to call Judith to the stand and cross-exam her regarding alleged statements she made to Paramedic Robertson, Officers Skochen and Kohler, and Dr. Ebner. Specifically, appellant argues that the State did not meet the requirements set forth in Evid.R. 607 and, therefore, should not have been permitted to impeach Judith by a prior inconsistent statement. This Court disagrees.
 {¶ 29} After Officer Skochen, paramedic Robertson, Officer Kohler, and Dr. Ebner testified, the State called Judith to the stand. Prior to Judith taking the stand, the court was advised that her testimony would be different from the statements she made to Officer Skochen, paramedic Robertson, Officer Kohler, and Dr. Ebner. The trial court noted that Judith is married to the appellant and that she had smiled at him in the courtroom. After considering this information, the court ruled that the State could take her testimony by leading questions, pursuant to Evid.R. 611(C). Appellant does not argue that the trial court erred in declaring Judith an adverse witness. Rather, appellant argues that the state did not meet the requirements of Evid.R. 607 and, therefore, could not impeach Judith by a prior inconsistent statement.
 {¶ 30} Evid.R. 607(A) provides:
"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(A), 801(D)(2), or 803"
 {¶ 31} Appellant bases his argument on State v. Rutkowski, (May 31, 1995), 9th Dist. No. 94CA005831 in which this Court held:
"If a witness's prior inconsistent statement is admissible pursuant to one of the hearsay exceptions in Evid.R. 803, the calling party does not have to establish surprise and affirmative damage under Evid.R. 607 before using that inconsistent statement during direct examination of the witness. Dayton v. Combs
(1993), 94 Ohio App.3d 291, 299-300."
 {¶ 32} Appellant argued that the State was required to establish surprise and affirmative damage under Evid.R. 607 before it could use the statements Judith made to Officers Skochen and Kohler, paramedic Roberston, and Dr. Ebner to impeach the testimony she gave at trial. Appellant's argument is without merit.
 {¶ 33} Given this Court's finding that the statements made by Judith to Officers Skochen and Kohler, paramedic Robertson, and Dr. Ebner were admissible pursuant to one of the hearsay exceptions in Evid.R. 803, this Court finds that the State was permitted to use prior inconsistent statements made by Judith to the same to impeach the testimony she gave at trial. Accordingly, appellant's third assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR
"Appellant's bribery conviction is against the manifest weight of the evidence."
 SIXTH ASSIGNMENT OF ERROR
"The trial court erred in denying the appellant's motion for judgment of acquittal as there was insufficient evidence on the essential elements of the crime of bribery."
 {¶ 34} In his fifth and sixth assignments of error, appellant challenges the adequacy of the evidence produced at his trial. Specifically, appellant avers that his conviction for bribery was based on insufficient evidence and was against the manifest weight of the evidence.[2] An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Appellant's fifth and sixth assignments of error lack merit.
 {¶ 35} As a preliminary matter, this Court notes that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 36} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 37} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 38} In the present case, appellant was convicted of bribery, in violation of R.C. 2921.02(C) which provides:
"No person, with purpose to corrupt a witness or improperly to influence him with respect to his testimony in an official proceeding, either before or after he is subpoenaed or sworn, shall promise, offer, or give him or another person any valuable thing or valuable benefit."
 {¶ 39} Wendy Smith, appellant's daughter, testified on behalf of the State. When questioned about a visit she made to her father on June 16, 2002, while he was incarcerated in the county jail, Mrs. Smith testified that her father told her:
"[T]ell your mother I will give her whatever she wants in the divorce case, just quit * * * bringing all these new charges with the criminal case is killing me."
 {¶ 40} At trial, appellant testified on his own behalf. When asked about the conversation he had with his daughter Wendy when she visited him in jail, appellant testified that he hold his daughter: "Wendy, tell your mother to stop this * * * * meaning I thought she was putting this all on me, and she could have whatever she wants in this divorce."
 {¶ 41} A review of the record shows that appellant was offering to give Judith whatever she wanted in their pending divorce action if she would recant her accusations as to the charges of felonious assault. Consequently, this Court finds no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of bribery. As this Court has determined that appellant's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Appellant's fifth and sixth assignments of error are overruled.
 SEVENTH ASSIGNMENT OF ERROR
"Appellant received ineffective assistance from his trial counsel when his counsel failed to object to the inadmiss[i]ble hearsay testimony."
 EIGHTH ASSIGNMENT OF ERROR
"Appellant received ineffective assistance from his trial counsel when his counsel failed to object to highly prejudicial remarks the state made in its closing argument."
 {¶ 42} In his seventh and eighth assignments of error appellant claims he received ineffective assistance of counsel. The two assignments of error have been combined to facilitate review. This Court finds that appellant has failed to meet the first prong of the test set forth in Strickland v. Washington, (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 43} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test:
"`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 466U.S. at 687.
 {¶ 44} Defendant bears the burden of proof on this matter.Colon, 2002-Ohio 3985, at ¶ 49, citing State v. Smith (1985),17 Ohio St.3d 98, 100.
 {¶ 45} Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Colon, 2002-Ohio-3985, at ¶ 49, citing Smith, 17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v.Watson (July 30, 1997), 9th Dist. No. 18215. Additionally, "debatable trial tactics do not give rise to a claim for ineffective assistance of counsel." In Re: Simon (June 13, 2001), 9th Dist. No. 00 CA0072, citing State v. Clayton (1980),62 Ohio St.2d 45, 49.
 {¶ 46} In this case, appellant avers that he was denied effective assistance of counsel when his attorney failed to object to the admission of the testimony of Dr. Ebner and Myriah on the grounds that it was inadmissible hearsay. Appellant also argues that he was denied effective assistance of counsel when his trial counsel failed to object to highly prejudicial remarks the State made in its closing argument. This Court finds that appellant's arguments regarding ineffective assistance of counsel are without merit.
Testimony of Dr. Ebner
 {¶ 47} In his seventh assignment of error, appellant contends that trial counsel's failure to object to Dr. Ebner's testimony concerning statements Judith made to him while he was examining her deprived appellant of his right to the effective assistance of counsel. This Court disagrees.
 {¶ 48} Dr. Ebner's testimony regarding what Judith told him during his examination of her is not objectionable as hearsay. When examining a patient, it is normal for the physician to question the patient as to how the injuries were received in an effort to diagnosis and treat the patient. There is no evidence in the record that Dr. Ebner asked Judith any questions beyond what was necessary in order for him to properly diagnosis and treat her injuries. Therefore, the testimony was properly admitted under Evid.R. 803(4). Evid.R. 803(4) provides an exception to the hearsay rule; statements made for the purposes of medical diagnosis or treatment are admissible if such statements are reasonably pertinent to diagnosis and treatment. As this testimony was properly admitted, trial counsel was not ineffective for failing to object. See State v. McKinzie (June 5, 2001), 10th Dist. No. 00AP-1182.
Testimony of Myriah Survance
 {¶ 49} Appellant also argues that his trial counsel's failure to object to the testimony of Myriah regarding statements Judith made to her while Myriah was preparing her mother's written statement deprived him of his right to effective assistance of counsel. This Court disagrees.
 {¶ 50} As stated in this Court's discussion of appellant's fourth assignment of error, the testimony of Myriah was properly admitted under Evid.R. 803(2). As this testimony was properly admitted, trial counsel was not ineffective for failing to object. See McKinzie.
Prosecutorial Misconduct
 {¶ 51} In his eighth assignment of error, appellant argues that he was denied effective assistance of counsel when his trial counsel failed to object to highly prejudicial remarks the State made in its closing argument. This Court disagrees.
 {¶ 52} It is well-settled that closing arguments are not evidence. State v. Frazier (1995), 73 Ohio St.3d 323, 338. The trial court so instructed the jury in the present case, stating: "However, I would advise you that what the attorneys say in closing arguments is not evidence[.]"
 {¶ 53} Furthermore, trial tactics of defense counsel generally are not enough to give rise to a claim of ineffective assistance of counsel. See State v. Clayton (1980),62 Ohio St.2d 45, 48-49. "The decision to object to the admission of evidence or to a closing argument is a trial tactic." State v.Ray (Nov. 22, 1995), 9th Dist. No. 17248.
 {¶ 54} After reviewing the record, this Court cannot conclude that failure of appellant's trial counsel to object to the prosecutor's remarks in question denied appellant of his right to effective assistance of counsel.
 {¶ 55} Appellant's seventh and eighth assignments of error are overruled.
 III. {¶ 56} Having overruled appellant's eight assignments of error, the decision of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Baird, J. and Slaby, J., Concur.
[1] This Court notes that appellant also argues that the statements Judith made to Officers Skochen and Kohler and paramedic Robertson were inadmissible under Evid.R. 803(1) and (4). However, given this Court's finding that the statements were admissible under Evid.R. 803(2), we need not discuss appellant's other arguments.
[2] Appellant is not appealing his felonious assault convictions.