DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Derrick D. Murray, appeals his conviction from the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In July 2007, Murray visited his son, S.J., and his son's mother, Kimberly Johnson, at her apartment. The visit turned into a heated argument, during which Murray choked Johnson, pushed her down, and threatened her with a knife, all while S.J. was present and, at times, while Johnson held S.J. in her arms. Johnson fled from the apartment and called 911.
 {¶ 3} Murray was indicted on one count of domestic violence, in violation of R.C. 2919.25(A), a fourth degree felony, one count of endangering children, in violation of R.C. 2919.22(A), a first degree misdemeanor, and one count of domestic violence, in violation of R.C. 2919.25(C), a second degree misdemeanor.
 {¶ 4} Following a jury trial, Murray was convicted on all three counts and he appeals. *Page 2 
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY PERMITTING OFFICER WOOD TO TESTIFY ABOUT OUT OF COURT STATEMENTS MADE BY THE ALLEGED VICTIM."
 {¶ 5} In his first assignment of error, Murray argues that the trial court erred by allowing Officer Wood to testify about Johnson's statements because they were hearsay. Murray objected to a few preliminary questions related to Johnson's physical appearance and condition when he arrived at her apartment, but did not object to the balance of her testimony. More significantly, Murray did not raise this argument in the trial court. Thus, he has forfeited this argument on appeal. State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. Murray has not argued the trial court committed plain error and he has not demonstrated any reason that this Court should address this issue for the first time on appeal. If this Court were to reach the merits, we would find any error to be harmless because the testimony was admissible as an excited utterance pursuant to Evid. R. 803(2). The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY PERMITTING OFFICER WOOD TO TESTIFY THAT MARKS ON THE ALLEGED VICTIM'S NECK WERE CONSISTENT WITH HER STATEMENT."
 {¶ 6} In his second assignment of error, Murray argues that the trial court erred by allowing Officer Wood to testify that the cause of Johnson's injuries was consistent with being choked. Murray did not object to Wood's testimony. Further, on cross-examination, Murray asked Wood if the injury matched Johnson's story and he agreed that it was consistent.
 {¶ 7} Murray did not raise this objection in the trial court and, therefore, he has forfeited this argument on appeal. Payne at ¶ 23. Murray has not argued the trial court *Page 3 
committed plain error and he has not demonstrated any reason that this Court should address this issue for the first time on appeal. The second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO OFFICER WOOD'S TESTIMONY THAT MARKS ON THE ALLEGED VICTIM'S NECK WERE CONSISTENT WITH HER STATEMENT."
 {¶ 8} In his third assignment of error, Murray argues that he was denied the effective assistance of counsel because trial counsel failed to object to Officer Wood's testimony about the marks on the victim's neck. This Court does not agree.
 {¶ 9} To establish the existence of ineffective assistance of counsel, Murray must show that trial counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v.Washington (1984), 466 U.S. 668, 687. Upon review of the record, this Court finds that Murray has failed to meet the first prong of theStrickland test.
 {¶ 10} Murray bears the burden of proving that counsel's assistance was ineffective. State v. Smith (1985), 17 Ohio St.3d 98, 100. There is a "strong presumption [] that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v.Watson (July 30, 1997), 9th Dist. No. 18215. "[D]ebatable trial tactics do not give rise to a claim for ineffective assistance of counsel."State v. Hoehn, 9th Dist. No. 03CA0076-M, 2004-Ohio-1419, at ¶ 45. Even if this Court questions trial counsel's strategic decisions, we must defer to his judgment. Id.
 {¶ 11} Trial counsel engaged in a strategy to challenge Officer Wood's conclusion that the marks were caused by Murray choking Johnson. On cross-examination, Counsel confirmed that Wood's source of information about the marks came solely from Johnson's statement to *Page 4 
him. Murray's counsel then asked whether the marks could have resulted from other causes. He specifically asked whether the marks could have been caused by blunt force trauma from an object, from a hand, or "if that's a hickey? It just matches her story, right?" Wood responded that the marks were consistent with Johnson's statement.
 {¶ 12} Murray's counsel chose a strategy that allowed him to challenge Officer Wood's conclusion that the marks were caused by his client. This was a strategic decision. Because counsel pursued a reasonable trial tactic, Murray cannot meet the first prong of the Strickland test.
 {¶ 13} A court need not analyze both prongs of the Strickland test where the issue may be disposed upon consideration of one. State v.Bradley (1989), 42 Ohio St.3d 136, 143. Because Murray cannot establish deficient performance, this Court need not address the second prong. Murray's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTIONS FOR ACQUITTAL AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT HIM OF THE CHARGES BROUGHT IN THIS CASE."
 ASSIGNMENT OF ERROR V "THE STATE OF OHIO FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE COMPLAINING WITNESS KIMBERLY JOHNSON AND HER SON WERE `FAMILY OR HOUSEHOLD MEMBERS' AS DEFINED IN OHIO REVISED CODE SECTION 2919.25."
 ASSIGNMENT OF ERROR VI "THE DEFENDANT-APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 5 
 {¶ 14} In his fourth, fifth, and sixth assignments of error, Murray argues his convictions are against the weight of the evidence and are not supported by sufficient evidence. He argues these assignments of error together in his brief, so we likewise address them together. This Court does not agree with Murray's arguments.
 {¶ 15} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence "are separate and legally distinct determinations." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. See, also, Thompkins, 78 Ohio St .3d at 386.
 {¶ 16} In State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462 (emphasis omitted), this Court explained that sufficient evidence "is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Accordingly, we address Murray's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 17} To determine whether a conviction is against the manifest weight of the evidence, an appellate court: *Page 6 
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 18} A weight of the evidence challenge maintains that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. quoting Tibbs v. Florida (1982), 457 U.S. 31, 42. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Otten, 33 Ohio App.3d at 340.
 {¶ 19} Murray was convicted on three counts, starting with felony domestic violence in violation of R.C. 2919.25(A), which required the State to prove that Murray knowingly caused or attempted to cause physical harm to a family or household member, Kimberly Johnson, and that Murray had previously been convicted of a domestic violence offense. Murray was also convicted of endangering children, in violation of R.C. 2919.22(A), which required the State to prove that Murray, being a parent, guardian, custodian, person having custody or control, or a person in loco parentis of S.J., a child under eighteen years of age, recklessly created a substantial risk to the health or safety of the child by violating a duty of care, protection, or support. Finally, Murray was convicted of misdemeanor domestic violence in violation of R.C. 2919.25(C), which required the State to prove that Murray, by threat of force, knowingly caused Kimberly Johnson, a family or household member, to believe that he would cause imminent *Page 7 
physical harm to a family or household member and that Murray had previously been convicted of an offense of domestic violence.
 {¶ 20} Officer Wood testified for the State. In July 2007, he responded to a 911 telephone call and arrived at Kimberly Johnson's apartment to find her upset. Wood was able to take a statement from Johnson, who said that her child's father, Murray, came to the apartment, they got into an argument over visitation, and the father eventually grabbed her around the neck and pushed her over. She then picked up the baby. Murray picked up a knife and swung it back and forth at her as he called her names. Murray pushed her again, while she held their child, and she fled from the apartment to a neighbor's, where she called 911. Wood also testified to physical injuries he observed on Johnson — red marks on the sides of her neck. Finally, Wood testified to Murray's prior conviction for domestic violence.
 {¶ 21} The State next called Kimberly Johnson to testify. She identified Murray as the father of her child. She testified that in July 2007, Murray came to her apartment, visited with their son for some time, and then they had an argument because he wanted to take the baby. Johnson testified that Murray choked her and pushed her down while she held their child. She also testified that he called her names and threatened her with a knife, again, while she held S.J. She testified that she escaped to a neighbor's apartment to call 911 and Murray left. Finally, Johnson testified to Murray's prior conviction for domestic violence involving her as the victim.
 {¶ 22} Based on the evidence presented at trial, this Court concludes that the jury did not lose its way and create a manifest miscarriage of justice in finding Murray guilty of all three counts. The greater weight of the evidence demonstrated that Murray committed domestic violence and child endangering when he choked Johnson, pushed Johnson, and threatened her with a knife. The evidence demonstrated that Johnson held their child while Murray committed *Page 8 
these acts. The jury did not lose its way and Murray's convictions are not against the weight of the evidence.
 {¶ 23} Before completing our analysis, we separately address Murray's fifth assignment of error, where he challenged the State's proof that Johnson and S.J. were "family or household members" as required for a conviction under R.C. 2919.25. Specifically, Murray argues that the State failed to prove that he was S.J.'s father. This Court has held that a mother's testimony that the defendant was a child's father was sufficient to establish that element beyond a reasonable doubt.State v. Mabry (Oct. 9, 1996), 9th Dist. No. 2514-M. In this case, as inMabry, the mother testified that the defendant was the father of the child involved in the domestic violence incident. In this case, unlikeMabry, Johnson did not equivocate or hesitate on this point. Johnson's identification of Murray as S.J.'s father, coupled with her additional testimony that she had no other sexual partners during the relevant time, provided sufficient evidence to prove that Murray was S.J.'s father. Murray's fifth assignment of error is overruled.
 {¶ 24} Having disposed of Murray's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra at *2. Murray's fourth, fifth, and sixth assignments of error are overruled.
 III. {¶ 25} Murray's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 9 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J. MOORE, J. CONCUR. *Page 1