DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Marcus Davis ("Davis"), appeals the judgment of the Summit County Court of Common Pleas which found him guilty of felonious assault with a fire arm specification, and having weapons while under disability. This Court affirms.
 I. {¶ 2} On July 5, 2007, Davis was indicted by a five-count indictment for aggravated burglary in violation of R.C. 2911.11(A)(1)/(2), a felony of the first degree; aggravated robbery in violation of R.C. 2911.01(A)(1)/(3), a felony of the first degree; robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree; felonious assault in violation of R.C. 2903.11(A)(1)/(2), a felony of the second degree; and having a weapon while under disability in violation of R.C. 2923.13(A)(2)/(3), a felony of the third degree. In addition, the indictment contained firearm specifications pursuant to R.C. 2941.145
for counts one through four. On July 6, 2007, Davis was arraigned, and he pleaded not guilty to all of the charges in the indictment. *Page 2 
 {¶ 3} On November 14, 2007, a jury trial commenced. On November 16, 2007, the jury returned a verdict of guilty for counts 4 and 5, and not guilty for counts 1, 2 and 3. On December 18, 2007, Davis was sentenced to a 3-year mandatory sentence for the firearm specification; to a definite term of 7 years for punishment for felonious assault; and for a definite term of 3 years for having weapons while under disability. The trial court further ordered that the sentence for the firearm specification was to run consecutively to the sentence in count 4, for a total of 10 years; the sentence for count 5 was to run concurrently with count 4; and that the sentence for this case was to run consecutively "with the sentence imposed in Case Number CR 06 03 1164, for a total of [] (12) years." Davis timely appeals setting forth one assignment of error.
 II. ASSIGNMENT OF ERROR "[DAVIS'] CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} Davis argues that his conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 5} When determining whether a conviction is against the manifest weight of the evidence, this Court has held that courts of appeal:
 "`must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' State v. Otten (1986), 33 Ohio App.3d 339, 340." State v. Worrell, 9th Dist. Nos. 23378, 23409, 2007-Ohio-7058, at ¶ 11.
"Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Internal quotation and *Page 3 
emphasis omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Finally, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' State v. Martin (1983),20 Ohio App.3d 172, 175." State v. Murray, 9th Dist. No. 24217, 2008-Ohio-6615, at ¶ 18.
 {¶ 6} In the case before this Court, Davis argues that "[m]ore than reasonable doubt exists regarding whether Appellant was involved in any way with the robbery and shooting of Jason Cantrell, other than as a bystander." Davis points to "[t]he fact" that two witnesses identified "the dark-skinned man as the shooter," while Davis was identified as the light-skinned man. Davis also points to the "belated confession" of Lorenzo Finsley, the other individual involved in the events that brought about this case, who allegedly confessed "that he was solely responsible" for the events that transpired.
 {¶ 7} However, Davis was only convicted of felonious assault and having a weapon while under disability. The jury found Davis not guilty of aggravated burglary, aggravated robbery, and robbery. Therefore, any reasonable doubt in regard to Davis' involvement in the alleged robbery is irrelevant to the issues on appeal.
 {¶ 8} Likewise, the sparse argument Davis provides as support for the claim that there is "[m]ore than reasonable doubt" in regard to whether he was involved with the shooting of the victim fails to give Davis' claims any credence. Davis claims that the belated confession of Finsley warrants the reversal of his convictions. However, the "belated confession" is outside of the trial court record, having been executed over 5 months after Davis' trial had concluded, and, therefore, cannot be considered by this Court.
 {¶ 9} Here, Davis was identified by three different people as the individual that shot the victim in the leg. The victim, Eva Walker, who lived at the residence where the shooting *Page 4 
occurred, and Debra Fite, a witness in the house at the time of the shooting, all testified that it was Davis who fired the second shot which struck the victim in the leg. However, assuming arguendo that Davis was not the individual who actually shot the victim, there is still a substantial amount of credible evidence supporting Davis' conviction through aiding and abetting.
 {¶ 10} During the recitation of jury instructions, the trial court specifically instructed the jury regarding aiding and abetting. The trial court explained to the jury:
 "[a] person who knowingly solicits, procures, aids, abets, or conspires with, directs or associates himself with another, either for the purpose of committing, or in the commission of a crime, is regarded as if he were the principal offender and is just as guilty as if he, personally, performed every act constituting the offense."
R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense[.]" In addition, anyone who "violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). An individual aids or abets "when he supports, assists, encourages, cooperates with, advises, or incites the other person in the commission of the crime, and shares the other person's criminal intent." State v. Ward, 9th Dist. No. 24105,2008-Ohio-6133, at ¶ 17, citing State v. Johnson (2001),93 Ohio St.3d 240, syllabus. Furthermore, an individual's intent may be inferred from circumstances surrounding the crime. Id. However, mere presence at the scene of the crime is insufficient. Ward at ¶ 17, citingJohnson, 93 Ohio St.3d at 243. *Page 5 
 {¶ 11} Davis admits in his brief before this Court that on the day in question, the victim "had telephoned Appellant about selling him some marijuana." In addition, in his brief Davis further concedes the following:
 "When they arrived at the home [of the victim], Davis and Finsley went upstairs to a bedroom with [the victim]. They agreed to purchase the ounce of marijuana, and left the house ostensibly to get money. When they returned and went upstairs, both Davis and Finsley had guns. [The victim] placed the marijuana on a dresser, when Davis pulled out his gun and told [the victim] to throw the marijuana onto the bed. [The victim] refused, and Davis allegedly fired a shot that missed [the victim]. A second shot was fired, and [the victim] was hit in the leg." (Internal citations omitted.)
In addition, the victim, Antwane Fite, Debra Fite, and Eva Walker all testified that Davis and Finsley arrived at the house in question together, that they left together, that they returned and proceeded to the victim's room, and then fled together. Furthermore, two witnesses who lived near the residence where the shooting occurred testified that they heard gunshots and saw two men running from the residence in question. Richard Fuller, who lived approximately 80 feet from the residence in question, testified that he could not make a positive identification on either of the individuals, but that he saw"[t]wo black men wearing white T-shirts[.]" Fuller also testified that the men had their hands under their shirts and were yelling "`[d]id you get that? Did you get the stuff?'" Likewise, Tiffany Crossland, another person who lived very close to the residence in question, testified that she saw two "African-American young adult males[]" running away from the residence in question shortly after hearing gunshots and heard one of the men say: "Did you get anything?"
 {¶ 12} A review of the record, and Davis' own admissions in his brief show that Davis supported, assisted, encouraged and cooperated with Finsley during the events in question. Furthermore, it can also be inferred that Davis shared the criminal intent of Finsley from his actions that went beyond simply being present at the scene of the crime. Even assuming for the *Page 6 
sake of argument that there were not three witnesses who identified Davis as the individual who shot the victim, there is still a great amount of credible evidence showing that Davis aided and abetted in the shooting of the victim. Therefore, this Court cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice which produced the exceptional case where reversal is warranted. Accordingly, Davis' conviction was not against the manifest weight of the evidence and his sole assignment of error is overruled.
 III. {¶ 13} Davis' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 7 
Costs taxed to Appellant.
SLABY, P. J. WHITMORE, J. CONCUR *Page 1